IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SECURITIES AND EXCHANGE            )
COMMISSION,                        )
                                   )
            Plaintiff,             )   Civil No. 05-728-JE
                                   )
       v.                          )   OPINION AND ORDER
                                   )
WILLIAM EDWARD SEARS and           )
PATRICIA JEAN SEARS-MILLION,       )
                                   )
            Defendant.             )
_____)

    Robert L. Mitchell
    Lloyd A. Farnham
    Helane L. Morrison
    Marc J. Fagel
    44 Montgomery Street, Suite 2600
    San Francisco, CA 94104
        Attorneys for Plaintiff

    Mark D. Blackman
    Ransom Blackman LLP
    1400 Congress Center
    1001 S.W. Fifth Avenue
    Portland, OR 97204-1144
        Attorney for Defendant Patricia Jean Sears-Million

1 - OPINION AND ORDER

     Ronald H. Hoevet
     Hoevet Boise & Olson, P.C.
     1000 S.W. Broadway, Suite 1500
     Portland, OR 97205
         Attorney for Defendant William Edward Sears

JELDERKS, Magistrate Judge:

Plaintiff Securities and Exchange Commission ("SEC") brings this action to compel compliance with administrative subpoenas issued to Defendants William Edward Sears and Patricia Jean Sears-Million ("the Sears"). I grant the motion.

## Background

The SEC and a federal grand jury are each investigating matters pertaining to sales of securities in certain companies (referred to in the briefing as the "Metropolitan Companies"). In March 2004, the SEC and grand jury each issued subpoenas duces tecum to the Sears seeking (according to Sears) "essentially the same records." The Sears produced documents in response. In March 2005, the Sears learned they are "targets" of the grand jury investigation. A "target" is a person the prosecutor or grand jury "has substantial evidence linking . . . to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." USDOJ United States Attorneys' Manual, § 9-11.151 (2000).

On March 22, 2005, the SEC issued the challenged administrative subpoenas, directing the Sears to appear and testify before SEC officials. The Sears appeared and answered various questions pertaining to their personal finances. They

2 - OPINION AND ORDER

refused to answer other questions concerning the specific matters the SEC is investigating, though their refusal was <u>not</u> premised on the grounds that the answers to those questions might tend to incriminate them.  Discussions between the attorneys did not resolve the impasse.  This action followed.

## **Analysis**

The Sears concede the SEC is authorized to issue subpoenas in furtherance of its investigatory functions, but they do assert various defenses.  I examine each in turn.

### A. **Effect of the "Wells Notice"**

To obtain judicial enforcement of an investigative subpoena, the SEC must make a *prima facie* showing that (1) the investigation is for a legitimate purpose, (2) the information sought by the subpoena may be relevant to that purpose, (3) the information sought is not already within the SEC's possession, and (4) any administrative steps to issue a subpoena have been followed.  See <u>United States v. Powell</u>, 379 U.S. 48, 57-58 (1964); <u>Jerry T. O'Brien, Inc. v. SEC</u>, 704 F.2d 1065, 1067 (9th Cir. 1983).  The burden then shifts to the respondent to prove that the subpoena was issued in bad faith or for an improper purpose, such as harassment or to pressure that person to settle a collateral dispute.  <u>Powell</u>, 379 U.S. at 58.  The recipient of a subpoena may also assert applicable defenses, such as attorney-client privilege, to specific questions or document requests.  However, an action to enforce an administrative subpoena is not the occasion to argue the

3 - OPINION AND ORDER

merits of the underlying dispute.  Id. (Rejecting argument that agency must establish probable cause that law was violated before subpoena can be enforced).

The Sears argue that, even assuming the challenged subpoenas initially were valid, the SEC investigation ended when the agency issued a "Wells notice."  Consequently, they reason, the SEC no longer has a valid basis for enforcing these subpoenas.  I disagree.

A Wells notice is issued by SEC staff.  It informs a person that the staff intends to recommend that the Commission charge that person with one or more violations of the securities laws.  The person is thereby given an opportunity to submit responsive evidence or argument to the SEC--in the form of a "Wells submission"--before the Commission decides whether to accept the staff recommendation.

The Sears point to no regulation that precludes the SEC from continuing with or reopening its investigation following issuance of a Wells notice.  On the contrary, the information submitted in response to a Wells notice may prompt further inquiry by the agency staff before making a final recommendation.  A Wells notice is more appropriately viewed as a preliminary recommendation that is being circulated for comment.  Even when no Wells submission is made in response to the Wells notice, the agency may thereafter learn of additional facts that warrant investigation, or seek additional documents or testimony to confirm its preliminary

understanding of the facts or to clarify any lingering confusion.

In the present case, although the SEC staff has reached some preliminary conclusions, the staff also has made clear its desire to hear testimony from the Sears before making a final recommendation to the Commission. If this court grants the SEC's motion, that agency is prepared to hear testimony from the Sears and consider it in any recommendation the staff makes to the Commission. I conclude that the subpoenas were issued in furtherance of a bona fide investigation, for which purpose the SEC now elicits the court's aid in enforcing those subpoenas.

The Sears also assert that because they made a Wells submission, the SEC now has all the information it requires, hence the agency cannot satisfy the third prong of the <u>Powell</u> standard. That is not correct. The agency has what information the Sears have chosen to furnish, but they have \not yet answered all questions that the SEC desires to ask. The SEC is entitled to ask those questions.

**B.   Bad Faith**

The Sears argue that the agency subpoenas are being used inappropriately to gather evidence for the grand jury. This contention is conclusory. In addition, the Sears have not shown that the agency, through its subpoena process, will be able to obtain documents or testimony from the Sears that the grand jury could not obtain through its own investigatory

powers. Consequently, the Sears have not shown prejudice either. Absent "special circumstances" not present here, the government is permitted to conduct simultaneous civil and criminal probes. See United States v. Kordel, 397 U.S. 1, 11-13 (1970); Standard Sanitary Manufacturing Co. v. United States, 226 U.S. 20, 52 (1912). The cases cited by the Sears are not on point.

C.  **SEC Publication 1662**

In refusing to answer questions, the Sears told the SEC they were asserting "[r]ights under the Fifth Amendment, but not the privilege against self-incrimination." Sears-Million Tr. 22. Rather, the Sears purported to invoke "the right to silence granted by the rules of the Commission (See SEC Publication 1662) and decline[d] to answer any question, produce any document, or take any action to facilitate the production of any document concerning Commission Investigation SF-2682 on the ground that such act might subject me to fine, penalty or forfeiture." Sears-Million Tr. 21.

Publication 1662 is a document furnished to subpoena recipients. The Sears rely on the following language: "You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you *or subject you to fine, penalty or forfeiture*." (emphasis added). The Sears contend this publication establishes an enforceable right, in and of itself.

By its own terms, the quoted sentence merely attempts to summarize the rights already guaranteed by the Fifth Amendment. Publication 1662 can neither expand nor contract the rights guaranteed by the Fifth Amendment. The Constitution independently says what it says and grants whatever rights it grants. Moreover, Publication 1662 is not a statute or regulation, nor does it establish vested rights. At most, an erroneous statement in Publication 1662 arguably may give rise to an estoppel. For instance, it might be argued that the SEC is estopped from penalizing the Sears for their refusal to answer questions during their appearances on April 15, 2005, if they acted in good faith reliance upon a statement of rights furnished to them by the SEC.[1] However, that does not mean the agency is bound in perpetuity by such statement of rights, and precluded from altering it. The SEC has now set forth its position regarding the "right to silence," hence the Sears can no longer rely upon any contrary or possibly confusing statement in Publication 1662.

Ultimately, the Sears can either assert a valid Fifth Amendment privilege, or they can choose not to, but they cannot assert a "Publication 1662 privilege."

D. **"Perjury Trap" and Right to View Evidence Prior to Testimony**

---

[1] That is a hypothetical scenario. The SEC is not seeking to penalize the Sears for their refusal to answer questions on April 15, 2005, but merely to compel them to answer those questions in a future appearance.

The Sears contend "there is a possibility that the Commission would claim that any statement made by [them] during the course of this examination would subject [them] to prosecution under Section 1621 of Title 18; nothing related to the underlying facts, but related to any inconsistency [the SEC] might perceive between anything [they] were to testify to and any statement attributed to [them] regarding the matters encompassed in the Commission's investigation that are already in the possession of the Commission."

Therefore, the Sears reason, before testifying they are entitled to view any transcripts, notes, recordings, or other documents that attribute to the Sears any statements concerning the matters under investigation. The materials they seek are not prior sworn testimony (if any) that the Sears themselves gave before the agency. With some exceptions, the agency usually will provide such a transcript upon request. See 17 C.F.R. § 203.6. Nor are the Sears seeking copies of their own contemporaneous notes or records so they can refresh their recollection of events before testifying. Rather, the Sears want to know what other witnesses have claimed the Sears said. For instance, if a witness told an SEC investigator that the Sears made certain representations regarding securities sold to that witness, the Sears insist they have a right to know what the witness said before giving their own version of events to the SEC.

SEC regulations declare such materials to be "non-public," at least during the investigatory phase. 17 C.F.R. §§ 203.1, 203.2, 203.5. The Sears counter that, as a target of the investigation, they have a due process right to view this material, apart from any rights possessed by the general public. However, the Sears point to no authority that confers such a right during the investigative phase. The cases they cite are easily distinguished,[2] and this court is not aware of any such right.

The Sears also suggest that the prosecutor is forcing the Sears to make a sworn statement to the SEC regarding their version of events, so they can then be charged with perjury in reliance upon a conflicting version of events recited by other witnesses. That hypothetical risk is present in virtually every civil or criminal proceeding. A witness may testify at deposition that the light was green, yet another witness swears it was red. That is not sufficient cause to excuse the witness from testifying. See United States v. McKenna, 327 F.3d 830, 837 (9th Cir. 2003).[3]

---

[2] For instance, in both In re Sealed Motion, 880 F.2d 1367 (D.C. Cir. 1989), and In re Ferris, 512 F. Supp. 91 (D. Nev. 1981), the witness was seeking a transcript of his own prior sworn testimony.

[3] The Sears' arguments regarding a "perjury trap" are without merit. That doctrine, which the Ninth Circuit has yet to recognize, asserts that a "perjury trap is created when the government calls a witness before the grand jury for the primary purpose of obtaining testimony from him in order to prosecute him later for perjury . . . on matters which are neither material nor germane to a legitimate ongoing investigation of the grand jury." United States v. Chen, 933 F.2d 793, 796 (9th Cir.1991).

**E.   General Fifth Amendment Privilege**

The Sears contend there is a Fifth Amendment privilege to remain silent that extends beyond the privilege against self-incrimination. The source of that alleged privilege, and its scope, are not fully explicated in their briefs. Their argument is that the Fifth Amendment entitles a person to remain silent not only when there is a legitimate concern about self-incrimination, but also when facing non-criminal sanctions. They rely on some language in the recent case of <u>United States v. Antelope</u>, 395 F.3d 1128, 1136 (9th Cir. 2005) referring to Justice O'Connor's concurring opinion in <u>McKune v. Lile</u>, 536 U.S. 24 (2002).

The Sears' reliance upon <u>Antelope</u> is misplaced. The ultimate holding in <u>Antelope</u> is simply that Mr. Antelope's privilege against self-incrimination was violated because he was sentenced to a longer prison term for refusing to make disclosures during his sex offender treatment which likely would have exposed him to additional criminal charges.

---

The Sears have not been subpoenaed to testify before the grand jury. Nor have they shown that the SEC's primary purpose in requesting their testimony is to prosecute the Sears later for perjury on unrelated matters, or that the testimony sought is "neither material nor germane to a legitimate ongoing investigation." <u>Cf.</u> <u>id.</u> at 797 ("When testimony is elicited before a grand jury that is attempting to obtain useful information in furtherance of its investigation, or conducting a legitimate investigation into crimes which had in fact taken place in its jurisdiction, the perjury trap doctrine is, by definition, inapplicable") (internal quotation marks and citations omitted).

The section of the opinion in Antelope relied on by the Sears is entitled "Compulsion." Id. at 1135. The Fifth Amendment guarantees that no person "shall be *compelled* in any *criminal case* to be a witness against himself." (Emphasis added). Not every adverse consequence that may result from asserting a Fifth Amendment right rises to the level of compulsion. Id. at 1135 ("We are mindful that an individual choosing silence does not get a free pass against all possible repercussions.") The Antelope panel therefore was considering what actions, when taken by the government because a person has asserted the privilege against self-incrimination, constitute compulsion.

It is in that context that Antelope cites Justice O'Connor's statement that consequences such as termination of employment, and loss of a professional license, can be sufficiently severe to constitute compulsion if imposed by the government because the person asserted the Fifth Amendment privilege against self-incrimination. Id. at 1136, quoting excerpts from McKune, 536 U.S. at 50 (O'Connor, J., concurring). Likewise, the issue in McKune was whether a requirement that a prisoner participate in a sex offender treatment program violated the inmate's right against self-incrimination. A plurality concluded that the penalties the inmate faced (such as reduced privileges, and a transfer to maximum security housing) if the inmate refused to make the required disclosures did not rise to the level of compulsion

prohibited by the Fifth Amendment. Cf. Lefkowitz v. Cunningham, 431 U.S. 801 (1977) (law divesting political party official from office, and disqualifying him from holding any other party or public office for five years, if he invokes the privilege against self-incrimination in any proceeding, satisfies the compulsion prong).

Neither Antelope, nor Justice O'Connor's concurrence in McKune, deal with the issue of when a person can properly claim a Fifth Amendment right to remain silent. Those cases deal with the issue of what sanctions can be imposed when a person has already invoked Fifth Amendment rights.

On its face, the right against self-incrimination "is expressly limited to 'any criminal case.'" United States v. Ward, 448 U.S. 242, 248 (1980). The Supreme Court has construed this phrase to include certain proceedings and penalties that, though not expressly denominated as "criminal," are "so punitive either in purpose or effect" as to be "quasi-criminal" such that the protection against self-incrimination applies. See id. at 248-49. In Ward, the Court concluded that a civil monetary penalty imposed against the owner or operator of a vessel from which oil or a hazardous substance had been discharged in violation of a federal statute, and the proceedings by which that penalty was assessed, were not "quasi-criminal" so as to implicate the Fifth Amendment's protection against self-incrimination. Id. at 248-55. Cf. United States v. United States Coin &

Currency, 401 U.S. 715 (1971) (nominally "civil" forfeitures can implicate right against self-incrimination); Boyd v. United States, 116 U.S. 616 (1886) (same); Roach v. National Transportation Safety Board, 804 F.2d 1147 (10th Cir. 1986) (license suspension proceeding for pilot was not "quasi-criminal" proceeding such that he could invoke the Fifth Amendment right against self-incrimination).

The Sears contend that the SEC proceeding is quasi-criminal, because they face the possible loss of their licenses, fines or other monetary penalties, and forfeiture. For purposes of the motion before me today, I need not decide whether the Sears' "quasi-criminal" characterization is accurate. Suffice to say that if the Sears invoke their Fifth Amendment right not to answer questions put to them by the SEC, that refusal to answer necessarily must be premised upon the traditional guarantee against self-incrimination in "criminal cases," and not upon some other nebulous Fifth Amendment right.

For purposes of the present motion, it also is not necessary to decide whether it is permissible for the SEC, or any other entity in some future action, to draw an adverse inference from invocation of the right against self-incrimination. At this point, it is unclear whether, the SEC will take adverse action against the Sears, or what kind of action and upon what grounds, whether the Sears will refuse to

answer certain questions, or what role that refusal could play in the eventual outcome of future proceedings.

Consequently, it would be premature to speculate on the possible implications of the Sears asserting the privilege against self-incrimination.

**F.     Whether to Delay the SEC Proceeding**

The Sears ask, in the alternative, that they be excused from testifying in response to the subpoenas until after the grand jury completes its investigation.  There can be unusual situations where forcing a person to proceed with a civil matter, in the face of a pending criminal matter, might be so prejudicial as to justify delaying the civil matter.  See United States v. Harding, 851 F. Supp. 1476, 1479-80 (D. Or. 1994) (ordering brief postponement of private disciplinary hearing against figure skater facing criminal charges, though denying request for indefinite delay).

Harding was an extreme case involving unusual facts, intense media coverage, pending criminal charges, and a rushed private civil proceeding.  The likelihood of unfair prejudice is much less here than it was in Harding.  The facts, procedural posture, and timing are very different.  The court is not aware of any significant media coverage of the Sears matter in Portland, and there is much less risk here, than in Harding, of tainting prospective jurors through a high-profile civil proceeding in advance of the criminal trial.  As yet, no criminal charges are even pending against the Sears.

The Sears cite an out-of-circuit case, SEC v. Dresser Industries, Inc., 628 F.2d 1368 (D.C. Cir. 1980) (en banc), which states:

> Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it . . . . Such cases have frequently arisen in the tax field, following the leading case of United States v. O'Connor, 118 F. Supp. 248 (D.Mass.1953). Cf. Boren v. Tucker, 239 F.2d 767, 772-773 (9th Cir. 1956) (distinguishing IRS summons enforcement before and after indictment). In some such cases, however, the courts may adequately protect the government and the private party by merely deferring civil discovery or entering an appropriate protective order.

Id. at 1375-76 (footnote and internal citations omitted).

Assuming, *arguendo*, that the foregoing rule would apply in this circuit, any consideration of that issue is premature. As yet, the Sears have not been indicted. In addition, at oral argument, the court was informed that any SEC civil proceeding would likely be stayed if an indictment were returned against the Sears. They would certainly be able to

15 - OPINION AND ORDER

request a stay from the agency; I will not presume in advance that such a request will be denied. Finally, the Sears have not pointed to any specific unfair prejudice, but only general speculation. The circumstances here do not warrant relief at this time.

## Conclusion

The SEC's motion (# 1) to compel the Sears to comply with the administrative subpoenas is granted. The Sears shall appear and testify, consistent with this opinion, at a time and place to be established by the parties, which shall be no later than August 15, 2005, unless the parties mutually agree to a later date.

DATED this 28th day of July, 2005.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge